a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| BRANDON JONES #05106-707,<br>Plaintiff | CIVIL DOCKET NO. 1:22-CV-00597<br>SEC P |
| VERSUS | JUDGE DAVID C. JOSEPH |
| BUREAU OF PRISONS ET AL,<br>Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

REPORT AND RECOMMENDATION

Before the Court is a civil action brought by pro se Plaintiff Brandon Jones ("Jones") under the Privacy Act, 5 U.S.C. § 522a(g)(1). ECF No. 1, 6. Jones is an inmate in the custody of the Bureau of Prisons ("BOP"), incarcerated at the United States Penitentiary in Pollock, Louisiana.

Because Jones fails to state a claim under the Privacy Act, his Complaint should be DENIED and DISMISSED WITHOUT PREJUDICE.

I.  Background

Jones alleges that he has been improperly classified and housed as a sex offender. ECF No. 1. Jones is serving a 360-month sentence for kidnapping imposed in the United States District Court for the District of New Mexico. *Id.*[1] Jones

---

[1] Jones was initially sentenced to 420 months of imprisonment. *United States v. Jones*, 1:11-cr-02994 (D. N.M.), ECF No. 148. Jones filed a direct appeal, which was dismissed as untimely. Jones then filed his first 28 U.S.C. § 2255 proceeding, arguing that counsel failed to appeal his sentence as directed. The court appointed new counsel; granted habeas relief under § 2255; and resentenced Jones to 360 months of imprisonment. Jones again appealed, and the Tenth Circuit affirmed the new sentence. *Jones v. United States*, 11-CR-2994 WJ, 2020 WL 2467436, at *1 (D.N.M. May 13, 2020).

1

appealed his sentence, but it was affirmed. *United States v. Jones*, 753 F. App'x 627, 628 (10th Cir. 2018). The United States Court of Appeals for Tenth Circuit summarized on appeal:

> On the night of November 5, 2011, Javier Vasquez was leaving a University of Texas at El Paso basketball game when he was accosted by Jones. Displaying what appeared to be a pistol in his waistband, Jones ordered Vasquez into his vehicle. He then called to another man standing nearby, Jesus Gallegos, who also entered Vasquez's truck. Jones drove the vehicle, with Vasquez in the passenger seat and Gallegos in the back.
>
> Jones demanded that Vasquez provide his personal identification number and direct them to a bank where Jones could withdraw funds. Gallegos grabbed Vasquez's head and face from behind and demanded the same. Vasquez complied, and Jones obtained funds from Vasquez's account at the bank. Jones then demanded more money from Vasquez, who guided Jones to a different bank in El Paso where Jones withdrew money several times in $300 increments. Jones gave Vasquez the *629 withdrawal receipts, telling him he would "need this for court."
>
> Vasquez begged to be released, noting that Jones and Gallegos had his truck and wallet. But the pair refused, fearing that Vasquez would contact the police. Nonetheless, it is clear that Jones and Gallegos lacked a coherent plan. Jones repeatedly mentioned going north on a road trip, and at times treated Vasquez almost as if he were a companion. He told Vasquez not to worry, and that he would be freed eventually. Jones also forced Vasquez to drink tequila. But for most of the misadventure, Jones and Gallegos essentially tortured Vasquez. Both men repeatedly struck Vasquez during the encounter. At one point, Vasquez told Jones he had missed a freeway entrance, prompting Jones to punch him in the head. Jones threatened to shoot Vasquez. Gallegos grabbed Vasquez from behind and drove his thumb into Vasquez's left eye. At another point, Gallegos noticed that Vasquez had loosened his seatbelt—in preparation for an escape attempt—and choked him with it.
>
> Jones drove the truck to Las Cruces, New Mexico, and headed toward Albuquerque. While in New Mexico, Jones stopped at another bank branch and withdrew funds from Vasquez's account. Also while in New Mexico, the vehicle approached a U.S. Border Patrol checkpoint. Jones threatened to kill Vasquez if he attempted to escape or alert Border Patrol at the checkpoint, saying "you may get me, but I already killed

> three people; one more's not gonna make a difference." Gallegos and Jones subsequently bound Vasquez's hands, legs, and ankles with duct tape, moved him to the back seat, and placed items over him. Apparently deciding that arrangement would appear too suspicious, however, the pair cut Vasquez free.
>
> Jones stopped the truck at a rest stop near Clines Corner, New Mexico, where he and Gallegos fell asleep. After waiting to ensure the pair were actually unconscious, Vasquez escaped from the truck and contacted law enforcement. He was transported to a hospital in Albuquerque, where he was treated for pain in his head, neck, and jaw, and for blurry vision in his left eye. Jones and Gallegos were charged in federal court with kidnapping in interstate commerce in violation of 18 U.S.C. § 1201(a)(1). Jones pled guilty on December 28, 2012.
>
> . . .
>
> Vasquez also spoke at the sentencing hearing. He explained that Gallegos and Jones had beaten him, strangled him, and gouged his eye. Vasquez referred to the crime as the longest night of his life, and stated "it was a very painful thing." Vasquez also testified that, the morning after the kidnapping, he could not recognize his swollen face in the mirror. He described his appearance as "like Rocky at the end of the movie."
>
> The district court imposed a sentence of 420 months' imprisonment. Jones' attorney failed to file a timely notice of appeal. However, Jones later obtained habeas relief based on ineffective assistance of counsel for that failing and the case was set for resentencing. While Jones' habeas case was proceeding, Gallegos prevailed in an appeal to this court challenging a sentencing enhancement for permanent bodily injury. *See United States v. Gallegos*, 610 F. App'x 786 (10th Cir. 2015) (unpublished). The probation office issued an addendum to Jones' Presentence Investigation Report in response to that decision. On resentencing, the district court imposed a new sentence of 360 months. Jones timely appealed.

*Jones*, 753 F. App'x at 628–30. The 360-month sentence was affirmed. *Id.*

The Pre-Sentence Recommendation ("PSR") mentioned that at some point Jones told the victim he "should just shoot him, or maybe rape him." ECF No 1-3 at 1-5; *Jones*, 1:11-CR-02994 (D. N.M.), ECF No. 308 at 7. Because of that comment,

3

the BOP classified Jones as a sexually dangerous person under the Adam Walsh Child Protection and Safety Act of 2006. 18 U.S.C. § 4248 ("the Walsh Act"). ECF No. 1-3 at 1-4.

At Jones's re-sentencing, Jones's attorney objected to that portion of the PSR. Counsel argued that the classification interfered with Jones's "efforts to rehabilitate and has caused innumerable problems because it has kept him out of programs and it has kept him in certain of the BOP institutions. He's classified as a sexual predator. He's placed in with sexual predators, with other inmates who have raped and caused sexual abuse to children." ECF No. 1-3 at 1-5; *Jones*, 1:11-CR-02994, ECF No. 308 at 8-9.

> In sustaining the objection, the judge noted:
>
> I think when people get drunk, they say and do a lot of things that if they were sober, they probably wouldn't do. I think -- so I'm not discounting what the victim said. But I don't see why it needs to be there, particularly since it's causing Mr. Jones issues and to be classified in a way that he shouldn't be. So, for that reason, I'm going to sustain the objection.
>
> Ms. McGarry, I'm going to ask, just on this particular one, that you draft a specific order. . . . Maybe wording this where the order certainly would include a finding that he, the Defendant, has never -- I looked at his arrest record, and he has never been arrested for what I would classify as any kind of sex offense.

*Id.* In its Amended Judgment, the sentencing judge specifically stated:

> The Court finds nothing in the defendant's history or characteristics that indicate he should be incarcerated as a sex offender. Furthermore, having to comply with any sex offender conditions. Therefore, the Court strongly recommends that its findings be taken into consideration and the defendant not be classified as a sex offender, nor be housed with sex offenders.

4

*Id.*, ECF No. 297 at 2. Despite the new judgment, Jones alleges that his designation as a sex offender was not removed.

Jones then sought to have the designation corrected through a § 2241 petition. *Jones v. Warden of USP Lee*, 7:20-CV-00370, 2021 WL 4172931, at *1 (W.D. Va. Sept. 14, 2021). The Government moved to dismiss, arguing that the relief sought was not available under § 2241; the claim was unexhausted; and the claim should be brought against the BOP under the civil remedy provision of the Privacy Act, 5 U.S.C. § 522a(g)(1). ECF No. 1-3 at 6-14; *Jones*, 7:20-CV-370 (W.D. Va.), ECF No. 19. Nonetheless, the Government asserted that, after Jones filed the § 2241 petition, "the BOP reviewed his Walsh Act assignment, determined a change was appropriate, and updated his Inmate Profile to reflect 'No Walsh Act Offense History.'" ECF No. 1-3 at 6-14. The court granted the Government's motion to dismiss the § 2241 petition, noting that Jones could bring a claim under the Privacy Act after exhausting administrative relief. *See Jones*, 2021 WL 4172931, at *2.

Jones then filed this Complaint under the Privacy Act, § 522a(g)(1). ECF No. 1. He maintains that, despite the Government's previous contention, he is still classified as a sex offender. In support of his claim, Jones attaches an email from USP-Pollock dated August 26, 2021, stating that he still has a Walsh Assignment and needs to speak to his Unit Team. ECF No. 1-3 at 19.

II. <u>Law and Analysis</u>

The United States Court of Appeals for the Fifth Circuit has held that § 522a(g)(1) has a jurisprudential exhaustion requirement, and an individual may not

bring a civil action under the Privacy Act without exhausting the administrative remedies unless:

> (1) the unexhausted administrative remedy would be plainly inadequate, (2) the claimant has made a constitutional challenge that would remain standing after exhaustion of the administrative remedy, (3) the adequacy of the administrative remedy is essentially coextensive with the merits of the claim (e.g., the claimant contends that the administrative process itself is unlawful), and (4) exhaustion of administrative remedies would be futile because the administrative agency will clearly reject the claim.

*Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 477 (5th Cir. 1997); *see also Mendoza v. United States*, 16-CV-14790, 2017 WL 1837756, at *3 (E.D. La. 2017). "If an individual has not exhausted the administrative remedies and does not meet one of the exceptions, he fails to state a claim under the Privacy Act." *Id.*

Jones did not pursue administrative remedies through the BOP, and he does not show that he meets any of the exceptions articulated by the Fifth Circuit. The sentencing court was clear that Jones should not be classified as a sex offender. The Government represented to another federal district court that the Walsh Assignment had been cleared, but Jones has presented evidence indicating otherwise. ECF No. 1-3 at 6-19; *Jones*, 7:20-CV-370 (W.D. Va.), ECF No. 19. Jones was advised that he should speak to his Unit Head and pursue the BOP's grievance process to give the BOP an opportunity to correct the error. ECF No. 1-3 at 19; *Jones*, 2021 WL 4172931, at *2. He has not pursued either means of resolving the issue.

Because Jones has not administratively exhausted his claim, he fails to state a claim under the Privacy Act.

## III. Conclusion

Because Jones has failed to state a claim under the Privacy Act, IT IS RECOMMENDED that his Complaint (ECF Nos. 1, 6) be DENIED and DISMISSED WITHOUT PREJUDICE to refiling after exhaustion is completed.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b). A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause. A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Tuesday, May 16, 2022.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE